1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOSEPH SHERMAN,

11            Petitioner,                    No. CIV S-06-0016 GEB DAD P

12        vs.

13   YOLO COUNTY SHERIFF, et al.,

14            Respondents.                   <u>FINDINGS AND RECOMMENDATIONS</u>

15   _____/

16            Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction

18   entered against him on March 20, 2004, in the Yolo County Municipal Court on misdemeanor

19   charges of interfering with lawful business at a public agency (California Penal Code § 602.1(b))

20   and obstructing or intimidating business operators or customers (California Penal Code §

21   602.1(a)).  He seeks federal habeas relief on the following grounds: (1) the evidence admitted at

22   his trial was insufficient to support his convictions; (2) the trial court violated his Sixth

23   Amendment right to a speedy trial; (3) the trial court improperly failed to give certain jury

24   instructions; (4) he was subjected to unreasonable search and seizure, in violation of the Fourth

25   Amendment; (5) the trial court improperly excluded evidence, including evidence that he was

26   subjected to "invidious discrimination" and vindictive prosecution; and (6) his rights to a fair

                                          1

1  trial, an impartial jury, due process, and equal protection were violated in connection with his

2  sentencing and appeal.  Upon careful consideration of the record and the applicable law, the

3  undersigned will recommend that petitioner's application for habeas corpus relief be denied.

4  PROCEDURAL AND FACTUAL BACKGROUND[1]

5  YOLO COUNTY PUBLIC LIBRARY

6  [Count 1, PC 602.1(b), Interfering with lawful business at a public agency]

7  The People called three witnesses:  Hazel Sampson, library customer; Ellen Brow, Coordinator for the library; James Johnstone, Manager of the library; and Officer Chudomelka, Davis Police Department.

Ms. Sampson was called to testify by the People.

Ms. Sampson testified that she was at the Davis branch of the Yolo County Library on November 25, 2003 in the afternoon to use a computer.  All stations were occupied when she arrived.  Ms. Sampson explained that the process for obtaining a station was that, if all the stations were occupied, the person would place his or her name on the waiting list.  As systems became available, the first person on the list would take the station of the person whose time had expired. If all were occupied and there was a waiting list, a person using the station would have one hour from the time they signed in before they would have to leave.  If there were available stations, and no other patron was waiting, the person may stay at the station until it was needed by someone else.

Ms. Sampson further testified that she was the first person on the waiting list and all stations were in use when she arrived.  At that time, she noted an individual, later identified by Ms. Sampson as the defendant in court, had exceeded his allotted time.  Ms. Sampson was forced to wait in line for an extended period of time and eventually had to use another computer terminal.  Ms. Sampson testified that this other computer did not have Microsoft Word software.  Ms. Sampson then wrote a note to the librarian regarding the incident and the note was later admitted into evidence.  (People's Exh. 1)  Defendant, acting in Pro Per, cross-examined Ms. Sampson.  Defendant asked Ms. Sampson if she understood the process at the library.  Ms. Sampson answered yes.  When the defendant asked if there were other individuals waiting for a computer, Ms. Sampson indicated that there were, however that most had left the area when he began to argue with

---

[1]  The following factual summary is drawn from the Settled Statement on Appeal, which was ordered settled and certified by the state trial court on December 15, 2004.  (Lod. Doc. 18.)

2

the library employees.  Defendant then asked if he in fact had not exceeded his time, and Ms. Sampson answered that he had exceeded the time.  When the defendant asked Ms. Sampson whether or not he, in fact, acted like a perfect gentleman throughout the entire time at the library, Ms. Sampson answered he did not.  Ms. Sampson stated that she did not ask the Defendant directly to use the computer but spoke to the librarian instead.

Ms. Brow was then called to testify for the People.

Ms. Brow testified that she was a coordinator at the Davis branch of the Yolo County Library and was working in the same capacity in the afternoon of November 25, 2003.  Ms. Brow identified the defendant as the person in the library who she contacted that day.  Ms. Brow testified regarding the policies for computer use at the library and the written policies were clearly posted in the computer area.  Pursuant to the library policy, the computers were on a first-come, first-served basis and that each person was entitled to an hour of time on the computer.  Ms. Brow further testified that each person was required to sign in and indicate the time they started to use the computer on the sign-in board.  After the initial sign-in, the person could not go back for any reason and change their start time on the board.  Ms. Brow added that if all stations were occupied, a patron is supposed to put his or her name on a waiting list for the next available station.  Ms. Brow also testified that if there were no patrons waiting, a person using a station could stay there as long as they needed, or until another patron arrived, but could not change their start time.  A copy of the rules was identified by Ms. Brow and later introduced into evidence.  (People's Exhs. 3, 4)

On the afternoon in question, Ms. Brow received a complaint from a patron who never got the chance to use a computer and left the library because the defendant did not relinquish the terminal.  After receiving the complaint, she approached the defendant at approximately 4:10 PM and informed him that his hour was up and he should relinquish the computer to other patrons waiting in line.  Ms. Brow waited for a few minutes and observed the defendant changing his start time on the board.  The defendant had a start time of 2:50 PM and the defendant changed the time to 4:10 PM.  Ms. Brow then approached the defendant to explain to him that altering the time on the board was prohibited.  Ms. Brow testified that the defendant immediately became angry and argumentative, stating that he was not going to leave because he had files saved on that particular computer.  Ms. Brow informed the defendant that there were rules as to the time and use of the computers at the library.  Defendant became verbally abusive and said he would not leave the station.  Ms. Brow stated that defendant frightened most of the patrons in the area and most of them left as a result of defendant's behavior.  Ms. Brow then notified Mr. Johnstone for assistance.

Mr. Johnstone called the police at approximately 4:15 PM. When police officers arrived at the library, defendant insisted that he would not leave the premises. After repeated unsuccessful attempts by the officers and library employees to get defendant to leave, Mr. Johnstone placed the defendant under citizen's arrest for disrupting and failing to leave a business.

Defendant then cross-examined Ms. Brow. In response to defendant's questions, Ms. Brow testified regarding the rules of computer use at the library. Mr. Sherman asked Ms. Brow to identify a copy of the rules and Ms. Brow identified them as the rules of the library. Mr. Sherman asked if a patron had to leave the computers if there were other stations available. Ms. Brow testified that ordinarily that was the case, however, in this case no stations were available until Mr. Sherman's behavior caused many to leave. Mr. Sherman then asked Ms. Brow if it were not true that he acted like a perfect gentleman during their contact. Ms. Brow testified that it was absolutely not true that he acted like a gentleman.

Mr. Johnstone, Manager of the library, was then called to testify by the People.

Mr. Johnstone testified that he was working in the library on November 25, 2003. Ms. Brow contacted Mr. Johnstone at approximately 4:00 PM and requested his presence in the computer area because of the defendant's behavior. Mr. Johnstone also received a note from Ms. Sampson regarding the defendant's failure to leave the computer terminal after one hour. When Mr. Johnstone arrived at the computer area, he observed the defendant being verbally abusive to Ms. Brow. Mr. Johnstone then testified that he approached the defendant, and based upon the information from Ms. Brow and the note from Ms. Sampson, told the defendant that he had to leave the library because he was in violation of library policies. Mr. Sherman remained verbally abusive and told Mr. Johnstone that it was a public library and he did not have to leave, and would not leave. Mr. Johnstone told the defendant that if he did not leave, he would have to call the police and have him arrested. Mr. Sherman refused to leave. Mr. Johnstone testified that he then called the police to assist in the situation at approximately 4:20 PM. Officers arrived at approximately 4:30 PM and defendant was still occupying the computer terminal.

At that time, defendant indicated that he was going to stay until around 5:00 PM. Mr. Johnstone and the officers waited in the computer area until the indicated time. Mr. Johnstone then re-approached the defendant and requested the defendant to leave the library without getting arrested. In response, defendant started yelling and refused to leave the library. Mr. Johnstone was forced to turn off the computer. After switching off the computer, Mr. Johnstone again offered the defendant the opportunity to leave the

4

property.  Defendant again refused.  Mr. Johnstone subsequently placed defendant under citizen's arrest for disrupting a business.

Officer Chudomelka of the Davis Police Department was called to testify by the People.

Officer Chudomelka testified that he is a trained police officer working for the City of Davis, and that he was on duty and in full uniform driving a police vehicle at approximately 4:20 PM on November 25, 2003.  Officer Chudomelka responded to a disturbance at the Yolo County Public Library at approximately 4:30 PM.  Upon arrival, the officer obtained a statement from Mr. Johnstone.  Mr. Johnstone requested the officer to ask the defendant to leave the library because of his behavior.  Officer Chudomelka asked the defendant to leave on several occasions but the defendant refused.  Officer Chudomelka and Mr. Johnstone waited until 5:10 PM to see if the defendant would leave voluntarily, but the defendant stayed.  Mr. Johnstone and Officer Chudomelka again asked the defendant to leave the terminal so he would not get arrested.   Defendant began to argue said he was not leaving unless he was arrested and taunted the officers to take him to jail.  Mr. Johnstone subsequently signed a citizen's arrest form and the defendant was taken into custody.

## ALBERTSON'S SUPERMARKET

[Count 2, PC 602.1(q) [sic], Obstructing or intimidating business operators or customers]

The first witness called by the People was Mr. Kenneth Ellis, Manager of Albertson's grocery store located at 1900 Anderson Road in the City of Davis, Yolo County.  Mr. Ellis testified that when he was working on September 14, 2005 at approximately 1:00p.m., he was approached by three customers regarding a man, later identified by Mr. Ellis in court as the defendant, Joseph Arch Sherman, outside the store stopping and harassing customers.  Mr. Ellis testified that the customers complained about the defendant being obnoxious and provoking, and was stopping and attempting to sell them an Albertson's gift car when they were entering the store.  Mr. Ellis was told that the defendant was aggressively trying to entice them to purchase the gift card, and when they refused, defendant would shout at them.

As a result of these complaints, Mr. Ellis went to the store entrance to see if the defendant was still present.  Mr. Ellis observed the defendant standing approximately six feet in front of the Albertson's entrance.  The defendant was aggressively trying to sell an Albertson's gift card to a customer entering the store.  However, when the customer refused, the defendant became loud and began to shout at the customer.

/////

Mr. Ellis then approached the defendant at the front of the store and informed him that he could not be at the store harassing customers. He also informed the defendant that Albertsons gift cards were not supposed to be sold by private persons. The defendant began to argue loudly with Mr. Ellis, stating that he had a right to be at the front of the store because it was a public place. Over a period of approximately ten minutes, Mr. Ellis repeatedly requested the defendant to leave the premises but the defendant refused. The defendant continued to argue with Mr. Ellis by quoting the Bible and the Penal Code. After numerous unsuccessful attempts to get the defendant off the property, Mr. Ellis told the defendant that the police would be notified. The defendant advised Mr. Ellis to contact the police.

After Officer Chudomelka from the Davis Police Department arrived at the location, the officer gave the defendant several opportunities to leave the area without getting arrested, but the defendant refused. Mr. Ellis subsequently placed the defendant under citizen's arrest.

The defendant, acting in Pro Per, then cross-examined Mr. Ellis. The defendant asked Mr. Ellis if he recalled his exact location at the front of the store. Mr. Ellis testified that the defendant was approximately six feet from the Albertson's entrance. When asked by the defendant if he had acted in a respectful manner and was not harassing customers, Mr. Ellis said he had not, and that he was aggressive with customers and interfering with their entry into the store.

Davis Police Officer Chudomelka was then called to the stand by The People. Officer Chudomelka testified that he arrived on the scene at approximately 1:30 PM and contacted the defendant. Upon arrival, Officer Chudomelka contacted Mr. Ellis regarding the disturbance. Officer Chudomelka testified that Mr. Ellis pointed out the defendant as the person bothering customers. Officer Chudomelka then contacted the defendant regarding the complaint and told him the store manager wanted him off the premises. The defendant then argued with the officer and refused to leave the area and stated that he had a right to be there because it was a public place. Officer Chudomelka offered the defendant three opportunities to leave the premises without getting arrested but the defendant refused. Defendant became angry and argumentative, and began to cast insults and quote the scripture. The defendant told Officer Chudomelka that Chudomelka would lose his job. Defendant then told the officer to arrest him. Mr. Ellis subsequently placed the defendant under citizen's arrest.

At this point, the Prosecution rested and Mr. Sherman testified on his own behalf.

/////

APPELLANT'S TESTIMONY AS TO BOTH COUNTS 1 and 2

[Count 1, PC 602.1(b) and (a)]

Defendant took the stand on his own behalf and testified in a
narrative fashion as follows:

Defendant argued that his constitutional rights were violated, and
that he was being harassed by the Davis Police Department. . . .
Mr. Sherman testified that he had not bothered anybody at the
library, that he did not see Hazel Sampson, and that he had resisted
Officer Chudomelka because Officer Chudomelka had no right to
arrest him in a public place. Mr. Sherman maintained that his
behavior was not an issue and that he had followed the rules of the
library.

On cross-examination, defendant stated that he did re-sign up and
put a new time on the board for the PC he was then using at the
Yolo County Public Library. Another computer had become
available and he renewed his sign-up for the same PC. Defendant
stated that he did not see Hazel Sampson, that she never asked him
to use the PC, and that he would have given up the PC to her.

[Appellant further summarized his testimony in his proposed
settled statement on appeal as follows:]

". . . Sherman testified that after he had been using a computer for
a little more than an hour, a man approached him, asking him for
the computer, him being next on the waiting list. Sherman
immediately got up from the computer & went to sign up for
another computer; at first he didn't know if there was anyone else
waiting for the next computer, although there was no one in the
immediate area, but since there had been several patrons waiting
lately, he went ahead & signed up on the waiting list, as he was
doing so, & before the other patron had gotten on to the
computer Sherman had been using, another patron got up and left
another computer, leaving one available in addition to Sherman's
previous computer. Since their [sic] was a saved file on that
particular computer that was more accessible to Sherman, he asked
the patron if it would work for him to use the other available
computer, both having the same exact programs & applications.
The patron said "Sure!" Sherman signed upon the dry-erase board
for another house on the available computer."

"Prosecution witnesses Brow and Sampson (an alleged patron)
testified that Sampson (a female) had been waiting for Sherman to
get off the computer once his hour was up. She testified in trial
that she never asked Sherman for the computer, nor did she
communicate to him in any way that she wanted to use a computer.
She testified that she left a note with the reference desk librarians
after failing to get a computer and then left."

7

"Sherman testified there was no Hazel Sampson. The only one waiting for a computer was a male gentleman, and when he asked Sherman for the computer, Sherman complied, although another one simultaneously became available so that they both were able to sign up for computer usage. Once Sherman began using the computer after re-signing up, according to the rules, librarian Brow approached him and said, "You can't do that." Sherman testified she was attempting to assert that he had broken the rules by "changing his time" when he re-signed up. She said Sherman had to leave because he had broken the rules. Sherman had not broken the rules & refused to leave. Sherman testified that Brow, Johnstone and other librarians had been mistreating him and harassing him for 1 ½– 2 years; that this was not the first such deceitful treatment of Sherman by librarians. . . . Re: Instant case incident, when Sherman refused to leave, Brow once again threatened to call the police. Librarian Johnstone then came to Sherman and said the same thing; if he doesn't leave Johnstone would call the police. Sherman told him, "Shame on you!" and continued working quietly. Sherman testified he ignored the threats of the librarians for the most part and continued working, hoping they wouldn't follow through with their deceptive and uncalled for threats. Officer Chudomelka & Liza arrived at the library and told Sherman he would be arrested if he didn't leave. Sherman showed them the posted rules and warned them of the librarians' misconduct. They nevertheless insisted they would take him to jail. The officers waited for Sherman to finish his hour on the computer to see if he would leave according to both parties' witnesses' testimony. Sherman was working and needed another hour on the computer, & therefore proceeded to sign up for another hour, as the rules state 'You may sign up to use the library computers as often as you wish.' Sherman testified he wasn't done yet. He testified that due to the fact that it was almost dinner time (approximately 5:10 PM), many of the patrons had left the computer area & the library for dinner; there was no one waiting for a computer, so there were plenty available for immediate usage, & Sherman refused to be intimidated out of his rights to use the public facilities that are available to everyone, & to use them to the same extent that others are entitled to, if he wishes. Librarian Johnston [sic] then got in his way & said, 'Mr. Sherman, don't you realize that you could leave right now and you wouldn't have to go to jail?' Sherman replied to him, 'Mr. Johnstone, don't you realize you could back off of your illegal intimidation & keep your job?' Both Johnstone and Officer Chudomelka then said Sherman would not be signing up for another hour on the computer, when Sherman attempted to proceed from the sign-up board to the computer, after signing up, Officer Chudomelka & Johnstone arrested him and took him to the Davis Jail."

[Appellant's summary of the testimony continues] "(Ct. 2) Sherman was in front of Albertson's grocery store asking customers if they wanted to purchase a gift card from him. He had

8

received the gift card as a gift; it was an Albertsons gift card of $100 value. According to Sherman's testimony in trial, Albertson's was at that point not a convenient place for him to shop, & instead cash would have been more useful to him; so he was offering the card @ a considerable discount to members of the public shopping at Albertson & other places in the shopping center. It was not illegal, & was a win-win scenario; a shopper could obtain instant savings of $25 or more on their groceries if they desired. Sherman testified he was courteous & professional to all he spoke with. After about 15 minutes or so, store manage Ellis came out of the store & said Sherman had to leave because one or more customers had complained that Sherman was bothering them. Sherman refused to leave saying he had not bothered anyone & that Ellis was welcome to watch & see if he was bothering anyone in any way by asking them if they wanted to buy the gift card in front of the store. Ellis did in fact remain in front of the store for a few minutes watching Sherman. Sherman testified he was not interfering in any way with any customers & was in a normal voice asking customers if they wanted to purchase the gift card. Ellis testified Sherman had shouted at customers. Sherman vehemently denied any shouting at customers in his testimony. Ellis then called the police. When Ellis informed Sherman he had called the police & Sherman would be arrested, Sherman then sharply rebuked Ellis. Officer Chudomelka came & told Sherman he had to leave or he would be arrested. He then arrested Sherman & took him to the Yolo County Jail."

(Lod. Doc. 18 at 2-13.)

On March 12, 2004, the District Attorney of Yolo County filed an amended complaint charging petitioner with the misdemeanor offenses of interfering with lawful business at a public agency, in violation of California Penal Code § 602.1(b) (count 1), and obstructing or intimidating business operators or customers, in violation of California Penal Code § 602.1(a) (counts 2 and 3). (Lod. Doc. 7.) On March 18, 2004, petitioner filed a motion to dismiss the complaint, based on an alleged violation of his right to a speedy trial. (Lod. Doc. 8.) That same day, the trial court denied petitioner's motion to dismiss on the grounds that his plea was entered on February 5, 2004. (Lod. Doc. 1 at 5.) On March 19, 2004, after a jury trial, petitioner was convicted on counts 1 and 2 and acquitted on count 3. (Id. at 7- 8.) On June 22, 2004, petitioner was sentenced to ninety days in county jail on count 1 and three years probation on count 2. (Id. at 12-13.)

1   Petitioner filed an appeal of his judgment of conviction in the Appellate Division

2   of the Yolo County Superior Court.  The Superior Court "affirmed" petitioner's convictions on

3   March 21, 2005.  (Lod. Doc. 1 at 25.)  On August 9, 2005, petitioner filed a petition for a writ of

4   habeas corpus in the California Court of Appeal for the Third Appellate District.  (Lod. Doc. 2.)

5   That petition was denied by order dated August 18, 2005, with a citation to In re Hillery, 202 Cal.

6   App. 2d 293 (1962).  (Lod. Doc. 3.)  On October 11, 2005, petitioner filed a petition for a writ of

7   habeas corpus in the California Supreme Court.  (Lod. Doc. 4.)  The California Supreme Court

8   denied that petition on November 2, 2005, with citations to In re Harris, 5 Cal. 4th 813, 826-27

9   (1993) and In re Waltreus, 62 Cal. 2d 218, 225 (1965).  (Lod. Doc. 5.)  The instant federal habeas

10  petition was filed in this court on January 4, 2006.

ANALYSIS

11  I.  Standards of Review Applicable to Habeas Corpus Claims

13  A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

14  some transgression of federal law binding on the state courts.  See Peatier v. Wright, 15 F.3d

15  860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle

16  v. Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

17  interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

18  Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

19  corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

20  (1972).

21  This action is governed by the Antiterrorism and Effective Death Penalty Act of

22  1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

23  1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

24  habeas corpus relief:

25      An application for a writ of habeas corpus on behalf of a
        person in custody pursuant to the judgment of a State court shall
26      not be granted with respect to any claim that was adjudicated on

10

the merits in State court proceedings unless the adjudication of the claim -

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001). If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008). See also Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo. Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

II.  Petitioner's Claims

    A.  Insufficient Evidence

        Petitioner's first claim is that the evidence introduced at his trial was insufficient to support his convictions for interfering with lawful business at the Davis Library and obstructing or intimidating business operators or customers at the Albertsons grocery store. (handwritten argument attached to form petition (hereinafter P&A) at 1-6.)  With regard to the events at the Albertsons store, petitioner argues that he was only attempting to speak to customers of the store and did not obstruct or interfere with them.  (Id. at 1.)  Petitioner also argues that he was simply exercising his constitutional rights to "freedom of speech & assembly" and that any annoyance to customers was caused by Albertsons employees and the police when they arrested petitioner and not by petitioner's own actions at the store.  (Id. at 1-2.)  With regard to the events at the Davis Library, petitioner argues that his behavior was in accordance with the rules of the library but that he was harassed by library employees, who are at fault for any disturbance.  (Id. at 3.)  Petitioner also alleges that the Davis Police Department "has a long history of invidious discrimination against [petitioner]" and that he was falsely arrested in this instance.  (Id. at 3, 5.)  Petitioner concedes that "both sides were speaking with elevated voices," but he argues that he was simply exercising his right to free speech.  (Id. at 5-6.)  Respondent urges the court to deny relief as to petitioner's claim of insufficient evidence on the merits.

        The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  "[T]he dispositive question under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'"  Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir.

2004) (quoting <u>Jackson</u>, 443 U.S. at 318).  "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds."  <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1274 (9th Cir. 2005).  In order to grant the writ, the federal habeas court must find that the decision of the state court reflected an objectively unreasonable application of <u>Jackson</u> and <u>Winship</u> to the facts of the case. <u>Id.</u> at 1275 & n.13.

The court must review the entire record when the sufficiency of the evidence is challenged in habeas proceedings.  <u>Adamson v. Ricketts</u>, 758 F.2d 441, 448 n.11 (9th Cir. 1985), <u>vacated</u> <u>on</u> <u>other</u> <u>grounds</u>, 789 F.2d 722 (9th Cir. 1986) (en banc), <u>rev'd</u>, 483 U.S. 1 (1987).  It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  <u>Jackson</u>, 443 U.S. at 319.  If the trier of fact could draw conflicting inferences from the evidence, the court in its review will assign the inference that favors conviction.  <u>McMillan v. Gomez</u>, 19 F.3d 465, 469 (9th Cir. 1994).  The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict.  <u>United States v. Mares</u>, 940 F.2d 455, 458 (9th Cir. 1991).  Thus, "[t]he question is not whether we are personally convinced beyond a reasonable doubt" but rather "whether rational jurors could reach the conclusion that these jurors reached."  <u>Roehler v. Borg</u>, 945 F.2d 303, 306 (9th Cir. 1991).  The federal habeas court determines sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law.  <u>Jackson</u>, 443 U.S. at 324 n.16; <u>Chein</u>, 373 F.3d at 983.

Petitioner was charged in connection with the incident at the Albertsons store with a violation of California Penal Code § 602.1(a).  That code section provides as follows:

> Any person who intentionally interferes with any lawful business or occupation carried on by the owner or agent of a business establishment open to the public, by obstructing or intimidating those attempting to carry on business, or their customers, and who refuses to leave the premises of the business establishment after being requested to leave by the owner or the owner's agent, or by a peace officer acting at the request of the owner or owner's agent, is

guilty of a misdemeanor, punishable by imprisonment in a county
jail for up to 90 days, or by a fine of up to four hundred dollars
($400), or by both that imprisonment and fine.

Petitioner was charged with a violation of California Penal Code § 602.1(b) in
connection with the incident at the Davis Library.  That code section provides as follows:

Any person who intentionally interferes with any lawful business
carried on by the employees of a public agency open to the public,
by obstructing or intimidating those attempting to carry on
business, or those persons there to transact business with the public
agency, and who refuses to leave the premises of the public agency
after being requested to leave by the office manager or a supervisor
of the public agency, or by a peace officer acting at the request of
the office manager or a supervisor of the public agency, is guilty of
a misdemeanor, punishable by imprisonment in a county jail for up
to 90 days, or by a fine of up to four hundred dollars ($400), or by
both that imprisonment and fine.

The provisions of California Penal Code §§ 602.1(a) and (b) do not apply to "[a]ny person on the
premises who is engaging in activities protected by the California Constitution or the United
States Constitution."  California Penal Code § 602.1(c)(2).

Viewing the evidence in the light most favorable to the verdict, the undersigned
concludes that there was sufficient evidence introduced at petitioner's trial from which a rational
trier of fact could have found beyond a reasonable doubt that petitioner violated California Penal
Code § 602.1(a) with respect to the incident at the Albertsons store and California Penal Code §
602.1(b) with respect to the incident at the Davis Library.  The evidence, as summarized by the
trial court and set forth above, supports the jury's finding that petitioner intentionally interfered
with lawful business at the Davis Library and intentionally interfered with lawful business at the
Albertsons grocery store by obstructing or intimidating customers of the store.  The state courts'
denial of habeas relief with respect to petitioner's insufficient evidence claim is not an
objectively unreasonable application of Jackson and Winship to the facts of the case.
Accordingly, petitioner is not entitled to federal habeas relief with respect to this claim.

/////

/////

B. <u>Speedy Trial</u>

Petitioner claims that delay in bringing his case to trial violated his Sixth Amendment right to a speedy trial. (P&A at 8-14.) The state court record reflects that petitioner engaged in the conduct underlying the offense charged in count one, involving the events at the Davis Library, on November 25, 2003. (Lod. Doc. 18 at 2.) He was arraigned on that charge on January 20, 2004, and pled not guilty. (Lod. Doc. 1 at 2.) Jury trial was set for February 26, 2004. (<u>Id.</u>) On February 26, 2004, the trial court found good cause to continue petitioner's trial until March 11, 2004. (<u>Id.</u> at 3.)[2] On March 2, 2004, the prosecution filed a motion to consolidate three misdemeanor cases then pending against petitioner. (Lod. Doc. 6.) One of those cases was the matter involving Albertsons grocery store, the conduct underlying which occurred on September 14, 2003. (<u>Id.</u>; Lod. Doc. 18 at 6.) On March 11, 2004, the date set for petitioner's trial, the trial court granted the prosecution's motion to consolidate. (Lod. Doc. 1 at 4.) Accordingly, on March 12, 2004, the prosecution filed an amended complaint charging petitioner with a violation of California Penal Code § 602.1 in connection with the incidents at the Albertsons store and the Davis Library. (Lod. Doc. 7.) Jury trial was then set for and commenced on March 18, 2004. (Lod. Doc. 1 at 5, 6.) On that same date, petitioner filed a motion to dismiss the charges based on a violation of his right to a speedy trial. (Lod. Doc. 8.)

In the instant petition, petitioner claims that his right to a speedy trial was violated because his trial took place approximately six months after the incident at the Albertsons store and approximately four months after the incident at the Davis Library. (P&A at 7.) He contends that the passage of these time periods were "sufficient to result in impaired ability to remember events, especially events concerning lesser consequential allegations of interference with business." (<u>Id.</u>) Petitioner also argues that the delays in commencing the trial that occurred in this case were "unnecessary" and allowed witnesses to manufacture false testimony, and that

---

[2] A notation on the minutes of the trial court reflects that the continuance was granted on the grounds that "other trials take pres." (Lod. Doc. 1 at 3.)

"court calendar congestion" does not provide sufficient cause to continue a criminal trial.  (Id. at 7-9.)

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . ." U.S. Const., Amend. VI.  In assessing a speedy trial claim, the court should consider several factors, which include "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." Doggett v. United States, 505 U.S. 647, 651 (1992) (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)).  See also McNeely v. Blanas, 336 F.3d 822, 826 (9th Cir. 2003); United States v. Valentine, 783 F.2d 1413, 1417 (9th Cir. 1986). No one of these four factors alone is either a necessary or sufficient to support a finding that there has been a deprivation of the constitutional right to a speedy trial. McNeely, 336 F.3d at 826. See also Vermont v. Brillon, ___ U.S. ___, 129 S. Ct. 1283, 1290 (2009) (the speedy-trial right is "amorphous," "slippery," and "necessarily relative").  Rather, the various factors are related and must be considered together.  Barker, 407 U.S. at 533.  However, "no showing of prejudice is required when the delay is great and attributable to the government." United States v. Shell, 974 F.2d 1035, 1036 (9th Cir. 1992).  See also Doggett, 505 U.S. at 651 (eight and one-half year delay between indictment and trial, six of which were attributable to the government's negligence, violated a defendant's constitutional right to a speedy trial even though he could not demonstrate the delay impaired his ability to mount a successful defense).

As the United States Supreme Court has observed:

The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.  Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case.

/////

Barker, 407 U.S. at 530.  In this regard, depending on the nature of the charges, courts have generally found post-accusation delay "presumptively prejudicial" when it begins to approach one year.  Doggett, 505 U.S. at 652, n.1; see also McNeely, 336 F.3d at 826 (three-year delay was presumptively prejudicial); United States v. Gregory, 322 F.3d 1157, 1162 (9th Cir. 2003) (22-month delay between the first superseding indictment and the trial date was presumptively prejudicial but did not weigh heavily in defendant's favor because it was not excessively long); United States v. Aguirre, 994 F.2d 1454, 1457 (9th Cir. 1993) (finding that "a five year delay is long enough to trigger a further look," but concluding that even the five-year delay in that case did not deprive the defendant of his constitutional right to a speedy trial when all the Barker v. Wingo factors were balanced).

The approximately six month interval between petitioner's arrest for the incident at the Albertsons store and his trial on both charges against him, although not insignificant, was not presumptively prejudicial based on the standards set forth in the authorities cited above. Moreover, there is no evidence that the delay here was for any improper purpose or that the prosecution improperly sought to lengthen the proceedings against petitioner.  See United States v. Marion, 404 U.S. 307, 325 (1971) (it would be improper for the prosecution to intentionally delay in order "to gain some tactical advantage over [defendants] or to harass them"); McNeely, 336 F.3d at 827.  Even assuming that the delay in this case is sufficient to cause the court to evaluate the Wingo factors, petitioner is not entitled to relief.

Moreover, the fourth factor identified in Wingo, actual prejudice to the defendant, weighs most heavily in the evaluation of petitioner's claim.  Valentine, 783 F.2d at 1417.  Petitioner has failed to establish that he was prejudiced by any delay in bringing his case to trial.  There is no evidence that petitioner's defense was hindered by the six months it took to hold the trial on the various charges against him.  Notwithstanding petitioner's unsupported allegations, there is no indication from the record that any witness gave false testimony or failed to remember the events in question.  On the contrary, the testimony admitted at petitioner's trial

reflected detailed recall of what occurred with respect to each incident. In the absence of a

showing of presumptive or actual prejudice, federal habeas relief as to this claim should be

denied.

In a separate but related argument, petitioner argues that delay in his sentencing

proceedings violated his rights to due process and equal protection. (P&A at 18-19.)

Specifically, he argues that the trial court "unjustly delayed sentencing for 90 days beyond the

statutory limit, over [petitioner's] objections," which delayed the filing of his appeal. (Id. at 18.)[3]

The state court record reflects that petitioner was convicted on March 19, 2004.

(Lod. Doc. 1 at 7, 8.) Sentencing was initially set for March 26, 2004. (Id.) On March 26, 2004,

petitioner's case was referred to the probation department, petitioner was ordered to attend an

interview with probation on April 21, 2004, and his sentencing proceedings were continued to

May 13, 2004. (Id. at 9.) On April 9, 2004, petitioner filed a motion for an earlier sentencing

date on the grounds that he was "innocent & I need to vindicate myself in appeal." (Lod. Doc.

9.) On May 13, 2004, at the request of the district attorney, petitioner was ordered to report to a

Dr. Johnston for an interview on June 2, 2004, and petitioner's sentencing hearing was continued

to June 22, 2004. (Lod. Doc. 1 at 11.) Petitioner was then sentenced on June 22, 2004. (Id. at

12, 13.)

As is the case with the claim addressed above regarding petitioner's trial, the

delay in petitioner's sentencing proceedings is not so excessive as to give rise to a finding of

presumed prejudice. Nor has petitioner established any actual prejudice stemming from the

alleged delay in sentencing. Although petitioner may have wished to file an appeal from his

conviction earlier, there is no evidence the delay made any difference in the ultimate outcome of

---

[3] In Pollard v. United States, 352 U.S. 354, 361 (1957), the United States Supreme Court "assume[d] arguendo that sentence is part of the trial for purposes of the Sixth Amendment [right to a speedy trial]." Accordingly, this court will analyze this sentencing claim in light of the standards applicable to speedy trial claims.

the appeal which he pursued.  In addition, petitioner was not incarcerated in the interim between his conviction and appeal, but rather was released on his own recognizance.  (Lod. Doc. 10.)  Under these circumstances, petitioner has failed to demonstrate that his right to a speedy trial was violated by any delay in the conducting of his sentencing proceedings.  Accordingly, petitioner is not entitled to relief on this claim.

C. Jury Instructions

Petitioner claims that the trial court improperly refused to instruct the jury at his trial with instructions regarding his First Amendment rights.  (P&A at 9-11.)  Petitioner explains that he "presented jury instructions that were for the most part quotes of caselaw protecting his free speech & assembly rights."  (Id. at 9.)  However, according to petitioner, the trial court refused to give the instructions or to allow petitioner to "argue law orally to the jury."  (Id.)  In support of this argument, petitioner cites several state court decisions which "clearly delineat[e] the long held rights of citizens in public forums such as shopping centers & public libraries as well."  (Id. at 10.)  See, e.g., Ex parte Blaney, 30 Cal. 2d 643, 656 (1947) ("[W]here an entire statute in general terms infringes on the constitutional right of free speech, it will be stricken down in its entirety[.]")  Petitioner argues that he was simply exercising his rights to free speech and assembly but that he was unjustly arrested because "property owners' rights must be sovereign."  (Id.)  He contends that he was unable to present his First Amendment defense because of the trial court's rejection of his proposed jury instructions.

A state court's determination of whether a requested instruction is allowed under state law cannot form the basis for federal habeas relief.  Estelle, 502 U.S. at 67-68.  See also Menendez v. Terhune, 422 F.3d 1012, 1029 (9th Cir. 2005).  Nevertheless, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process."  Hines v. Enomoto, 658 F.2d 667, 672 (9th Cir. 1981) (quoting Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)).  See also Prantil v.

California, 843 F.2d 314, 317 (9th Cir. 1988) (To prevail on such a claim petitioner must demonstrate that an erroneous instruction "so infected the entire trial that the resulting conviction violates due process").  The analysis for determining whether a trial is "so infected with unfairness" as to rise to the level of a due process violation is similar to the analysis used in determining, under Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), whether an error had "a substantial and injurious effect" on the outcome.  See Thomas v. Hubbard, 273 F.3d 1164, 1179 (9th Cir. 2001), overruled on other grounds by Payton v. Woodford, 299 F.3d 815, 828 n.11 (9th Cir. 2002).  Where, as here, the challenge is a failure to give an instruction, the petitioner's burden is "especially heavy," because "[a]n omission, or an incomplete instruction is less likely to be prejudicial than a misstatement of the law."  Henderson v. Kibbe, 431 U.S. 145, 155 (1977).  See also Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997).

    The record in this federal habeas proceeding does not contain the jury instructions actually given to the jury at petitioner's trial nor does it include petitioner's proposed jury instructions with respect to First Amendment rights.  However, the court notes that petitioner was charged with interfering with the conducting of lawful business at the Davis Library and of interfering with the conducting of lawful business by intimidating customers at the Albertsons store.  A jury found beyond a reasonable doubt that he committed these crimes.  Jury instructions on the right of peaceful assembly and exercise of free speech would appear to be irrelevant to the charges upon which petitioner was convicted.  In this regard, petitioner did not have a First Amendment right to intimidate Albertsons customers or to violate the posted rules of the Davis Library.  There is no significant evidence in the record to support petitioner's "defense" that he was arrested merely because he was peacefully exercising his right to free speech.  Cf. United States v. Crandall, 525 F.3d 907, 911 (9th Cir. 2008) ("[A] defendant is entitled to have the judge instruct the jury on his theory of defense, provided that it is supported by law and has some foundation in the evidence") (quoting United States v. Fejes, 232 F.3d 696, 702 (9th Cir. 2000)).  Had the jury at his trial believed there was a reasonable doubt as to whether petitioner was in fact

merely exercising his right to free speech in a peaceful manner, they would have acquitted him of all charges based upon a plain reading of statutes that he was charged with violating.

Petitioner has failed to sustain his "heavy burden" of demonstrating that the trial court's failure to give his proposed jury instructions so infected his trial that the resulting convictions violated due process. Accordingly, he is not entitled to relief on this claim.

D. Fourth Amendment

Petitioner's next claim is that his Fourth Amendment rights were violated when he was "unjustly seized in front of Albertsons for doing no more than expressing objections to being forced to leave by [the manager]," and when he was "unjustly seized in the Yolo County Library for doing no more than refusing to go along with prima facie discrimination." (P&A at 11.)

The United States Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976). There is no evidence before the court that petitioner did not have a full and fair opportunity to litigate any Fourth Amendment claim he wished to present in state court. Accordingly, this claim is barred in this federal habeas proceeding. Stone, 428 U.S. at 494.

E. Exclusion of Evidence

Petitioner claims that the trial court improperly excluded evidence at his trial, including evidence that he was subjected to "false arrests, kidnappings, invidious discrimination, etc. committed by police & d.a." (P&A at 13.) In this regard, petitioner explains that two of the Davis police officers who testified for the prosecution at his trial had "committed . . . previous violations of [petitioner's] rights." (Id.) He states that he wished to introduce "evidence of years of false arrests & unjust prosecutions of [petitioner] by the same d.a. & the same officers testifying, with court vindications of [petitioner] proving they are guilty." (Id. at 14.) Petitioner

argues that evidence of prior discriminatory actions taken against him by the officers in question would have "proven conclusively to jury the undeniable patterns of systematic harassment of [petitioner] by the Davis police" and would have discredited their testimony at petitioner's trial. (Id.) Petitioner also states that he wished to introduce "information about complaints of excessive force by police officers within five years before [his] arrest." (Id. at 14, 18.) None of the evidence described by petitioner, and which he claims he was barred from introducing at trial, has been provided to this court by petitioner.

Criminal defendants have a constitutional right, implicit in the Sixth Amendment, to present a defense; this right is "a fundamental element of due process of law." Washington v. Texas, 388 U.S. 14, 19 (1967). See also Crane v. Kentucky, 476 U.S. 683, 687, 690 (1986); California v. Trombetta, 467 U.S. 479, 485 (1984); Webb v. Texas, 409 U.S. 95, 98 (1972); Moses v. Payne, 555 F.3d 742, 757 (9th Cir. 2009). However, the constitutional right to present a defense is not absolute. Alcala v. Woodford, 334 F.3d 862, 877 (9th Cir. 2003). "Even relevant and reliable evidence can be excluded when the state interest is strong." Perry v. Rushen, 713 F.2d 1447, 1450 (9th Cir. 1983). A state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process. Drayden v. White, 232 F.3d 704, 710 (9th Cir. 2000); Spivey v. Rocha, 194 F.3d 971, 977-78 (9th Cir. 1999); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991). A state law justification for exclusion of evidence does not abridge a criminal defendant's right to present a defense unless it is "arbitrary or disproportionate" and "infringe[s] upon a weighty interest of the accused." United States v. Scheffer, 523 U.S. 303, 308 (1998). See also Crane, 476 U.S. at 689-91 (discussion of the tension between the discretion of state courts to exclude evidence at trial and the federal constitutional right to "present a complete defense"); Greene v. Lambert, 288 F.3d 1081, 1090 (9th Cir. 2002). Further, a criminal defendant "does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of

evidence." Montana v. Egelhoff, 518 U.S. 37, 42 (1996) (quoting Taylor v. Illinois, 484 U.S. 400, 410 (1988)). "A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision." Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005).

Petitioner has failed to demonstrate that the trial court's rulings excluding evidence of past incidents of "false arrests, kidnappings, [and] invidious discrimination" rendered his trial fundamentally unfair. Evidence that the Davis police or the state prosecutor's office violated petitioner's rights in the past, even if true, is not necessarily relevant to the charges that were brought against petitioner in this case and therefore could be properly excluded from introduction at his trial. There is no evidence before this court that petitioner's arrests at the Davis Library or the Albertsons store were the result of discrimination, a vendetta, or anything other than petitioner's own actions. There is also no evidence before this court that petitioner's arrests involved the excessive use of force by law enforcement personnel. The state courts' rejection of this claim is not contrary to or an unreasonable application of federal law.

Accordingly, petitioner is not entitled to federal habeas relief with respect to this claim.

F. Discriminatory Prosecution

Petitioner claims that he was arrested and charged because of "invidious discrimination," and/or because of a vendetta against him based on his "evangelism activities." (P&A at 15.) He also claims that he was prosecuted because of his exercise of his rights of free speech and assembly. (Id. at 16.) In this regard, petitioner states that he was exercising his right to "freedom of religion" at the Davis Library because he was "using the computer to translate an evangelistic prayer." (Id.) He explains that he has prevailed in numerous prior criminal proceedings brought against him and that a judge presiding over one of those proceedings stated that petitioner's rights had been violated by the Davis Police Department. (Id.) Petitioner also claims that the District Attorney's office has "recruited several judges to participate in the invidious discrimination creating kangaroo courts & mockeries of the justice system,

23

compounded by a corrupt appellate process in the lower court." (Id. at 15-16.) Petitioner argues that "while the multiple & repeated violations may not have all been pertaining to religion alone, clearly he has 1) been singled out for selective enforcement, 2) the distinction is deliberate, 3) it is invidious." (Id. at 17.)

Equal protection of the law is denied when state officials enforce a valid statute in a discriminatory fashion. Yick Wo v. Hopkins, 118 U.S. 356 (1886). The Due Process Clause prohibits discriminatory prosecution in the administration of a penal statute. Two Guys from Harrison-Allentown, Inc. v. McGinley, 366 U.S. 582, 588 (1961). However, "'[s]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.'" Wayte v. United States, 470 U.S. 598, 607 (1985) (quoting Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978)). See also Nunes v. Ramirez-Palmer, 485 F.3d 432, 441-42 (9th Cir. 2007) (charging decision generally rests entirely within the prosecutor's discretion). In addition, "'the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation' so long as 'the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'" Bordenkircher, 434 U.S. at 364 (quoting Oyler v. Boles, 368 U.S. 448, 456 (1962)). In order to prevail on a claim of discriminatory prosecution, petitioner must show that he was selected for prosecution "on the basis of an impermissible ground such as race, religion or exercise of ... constitutional rights," United States v. Moody, 778 F.2d 1380, 1386 (9th Cir. 1985), amended on other grounds, 791 F.2d 707 (9th Cir. 1986), and that the selective prosecution was "motivated by a discriminatory purpose." Wayte, 470 U.S. at 608.

Here, petitioner has failed to make the required showing. The record before this court reflects that petitioner's prosecution was based on evidence that he violated the posted rules in a disruptive manner at the Davis Library and intimidated and harassed customers immediately outside the Albertsons store. Contrary to petitioner's numerous unsupported allegations, there is

24

no evidence in the record suggesting that he was prosecuted for exercising his right to "assembly," free speech, or religion, or for any other illegitimate reason. Moreover, petitioner has failed to make a showing that the authorities had a discriminatory motive in choosing to prosecute him for these misdemeanor offenses. Nor has petitioner shown that his prosecution resulted from any personal or vindictive bias. See United States v. Doe, 125 F.3d 1249, 1256 (9th Cir. 1997). Petitioner's citation to case law concerning police actions which deny citizens the right to free speech or assembly are factually distinguishable and not on point. There is no evidence before this court that the authorities prevented petitioner from exercising his constitutional rights. Accordingly, for all of these reasons, petitioner is not entitled to habeas relief on this claim.

G. Petitioner's Appeal

Petitioner claims that his due process rights were violated in connection with his appeal. Specifically, he claims that the trial court lost the "CD" of his trial proceedings, which deprived him of a sufficient record on appeal in violation of state law, that oral argument on his appeal was "delayed," and that the "denial of appeal" did not occur until fourteen months after the decision. (P&A at 18.) In his traverse, petitioner states that he filed a timely appellate brief, but was unable to file his "second Appellant's Brief." (Traverse at 5.) He alleges that the "court ruled entire CD to be the settled statement," even though the "CD was inaudible." (Id.) Petitioner also claims that there were delays in finalizing the Settled Statement on Appeal and that he was unable to comply with court orders and deadlines after he began serving his jail term because the court failed to send him "rulings" and "case documents." (Id. at 5-6.) Petitioner claims that these errors deprived him of due process, or "a requirement of fairness in the application of the criminal law to all stages of the proceedings," and of his right to equal protection of the laws. (P&A at 19.) Petitioner contends in this regard that "the blatant wanton trampling of the state statutes, with seemingly total disregard for [petitioner's] rights from beginning to end of appellate process, is clearly a deprivation of equal protection." (Id.)

The state court record reflects that petitioner was sentenced on June 22, 2004. (Lod. Doc. 1 at 12, 13.)  A further hearing was set for July 28, 2004.  (Id.)  On June 24, 2004, petitioner filed a motion for stay of execution of his sentence pending his appeal and for the appointment of a "conflict panel attorney" to assist him in his appeal.  (Lod. Doc. 10.)  Both of these motions were granted on that same date.  (Id.)  Petitioner failed to appear at the further hearing on July 28, 2004, and the hearing was therefore rescheduled for August 5, 2004, and subsequently to August 10, 2004.  (Lod. Doc. 1 at 14, 15.)  On August 5, 2004, petitioner filed a motion "to expedite appellate process."  (Lod. Doc. 11.)  On August 10, 2004, the Yolo County Superior Court appointed appellate counsel for petitioner.  (Lod. Doc. 12.)  On August 20, 2004, petitioner filed a motion for substitute appellate counsel.  (Lod. Doc. 13.)  On August 25, 2004, petitioner's appellate counsel filed a Statement on Appeal and a request for the trial transcript. (Lod. Doc. 14.)  On September 29, 2004, petitioner's motion for substitute appellate counsel was denied and petitioner requested that he be allowed to represent himself.  (Lod. Doc. 1 at 17.)  On October 7, 2004, petitioner's motion to represent himself was granted.  (Lod. Doc. 1 at 18.) Petitioner subsequently filed his Proposed Settled Statement on October 29, 2004.  (Lod. Doc. 15.)

On November 17, 2004, petitioner filed a writ of mandate seeking to compel the Yolo County Superior Court to provide the recorded transcript of the proceedings in his case. (Lod. Doc. 16.)  In that motion, petitioner stated that he had been informed that part of the transcript had been "lost or destroyed, presumably by 'hard drive crash.'"  (Id.)  Petitioner also requested additional time, after he received the requested transcripts, to file a Completed Statement on Appeal.  (Id.)  On that same date, the trial court granted petitioner's request for transcripts, stayed execution of petitioner's sentence, and granted petitioner a continuance to file his Completed Statement on Appeal.  (Lod. Doc. 1 at 19.)  On December 8, 2004, the Yolo County District Attorney filed a Proposed Statement on Appeal.  (Lod. Doc. 17.)  On December 13, 2004, the trial court held a hearing on the Settled Statement.  (Lod. Doc. 1 at 21.)  On

December 15, 2004, the Settled Statement on Appeal was filed. (Lod. Doc. 18.) On March 21, 2005, petitioner's judgment of conviction was affirmed. (Lod. Doc. 1 at 25.)[4]

"Where a state guarantees the right to a direct appeal, as California does, the state is required to make that appeal satisfy the Due Process Clause." Coe v. Thurman, 922 F.2d 528, 530 (9th Cir. 1990) (citing Evitts v. Lucey, 469 U.S. 387 (1985)). Excessive delay in the appellate process may rise to the level of a due process violation. Id. But "not every delay in the appeal of a case, even an inordinate one," implicates an appellant's due process rights. United States v. Antoine, 906 F.2d 1379, 1382 (9th Cir. 1990) (quoting Rheuark v. Shaw, 628 F.2d 297, 303 (5th Cir. 1980)). In analyzing such due process claims on the merits, courts have relied on the four factors set forth in Barker v. Wingo, 407 U.S. at 530. Coe, 922 F.2d at 530. As noted above, those factors are "length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Id. Important factors in determining prejudice in the context of a delayed appeal are: "1) oppressive incarceration pending appeal; 2) anxiety and concern of the convicted party awaiting the outcome of the appeal; and 3) impairment of the convicted person's grounds for appeal or of the viability of his defense in case of retrial." Id. at 532 (citations omitted.). The third factors "is the most significant." Id.

Petitioner has failed to demonstrate that he suffered any prejudice as a result of any delay in the disposition of his appeal from his conviction, regardless of any alleged violations of state law in the course of that appellate review. First, it appears that petitioner was not incarcerated until June 21, 2005, after his conviction had been affirmed. Therefore, the first factor identified in Wingo has not been met. As to the second Wingo factor, petitioner

---

[4] Miscellaneous documents filed by respondent reflect that petitioner filed a "Petition for Appeal" on March 23, 2004, prior to the time that he was sentenced. (Lod. Doc. 19.) Petitioner's motion for counsel on appeal, filed the same date, was denied on the grounds that petitioner had "not been sentenced yet." (Id.) On December 3, 2004, petitioner filed an "Appellant's Opening Brief," which was stricken. (Id.) On December 13, 2004, petitioner filed a "Motion to Overturn Convictions of Cases, or for New Trial." (Id.) This motion was denied on the grounds that petitioner had already filed an appeal from his judgment of conviction. (Id.) On May 24, 2005, petitioner's probation was revoked. (Id.)

1    "undoubtedly experienced anxiety and concern during the protracted pendency of this appeal,"

2    but no more "than any other prisoner awaiting the outcome of an appeal." Antoine, 906 F.3d at

3    1382-83. With regard to the third factor, there is no evidence in the record before this court that

4    any delay impaired petitioner's grounds for appeal or prevented him from prosecuting his appeal.

5    Petitioner's unsupported and unspecific allegations to the contrary are insufficient to establish

6    prejudice. Under the circumstances presented here, and after balancing the factors identified in

7    Wingo, the court finds that petitioner's right to due process was not violated by any delay in his

8    state court appellate proceedings.

9        Petitioner also claims he was denied equal protection of the laws in the processing

10   of his appeal. The Equal Protection Clause of the Fourteenth Amendment provides that no State

11   shall "deny to any person within its jurisdiction the equal protection of the laws." This is

12   "essentially a direction that all persons similarly situated should be treated alike." City of

13   Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). Petitioner has failed to

14   demonstrate that he was treated differently than any other similarly situated litigant by the state

15   appellate court. Accordingly, he is not entitled to federal habeas relief with respect to this claim.[5]

16                                        CONCLUSION

17       Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED that

18   petitioner's application for a writ of habeas corpus be denied.

19       These findings and recommendations are submitted to the United States District

20   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-

21   one days after being served with these findings and recommendations, any party may file written

22   objections with the court and serve a copy on all parties. Such a document should be captioned

23   _____

24       [5] Petitioner claims in a cursory fashion that his rights to an "impartial jury" and "to
     confront witnesses" were violated in connection with his state court appeal and/or rulings by the
25   trial court. (P&A at 19.) These conclusory allegations do not entitle petitioner to habeas corpus
     relief. See Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) ("'[c]onclusory allegations which
26   are not supported by a statement of specific facts do not warrant habeas relief'") (quoting James
     v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)).

"Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).[6]

DATED: February 9, 2010.

_Dale A. Drozd_
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8
sherman16.hc

---

[6] If petitioner elects to file objections to the findings and recommendations, he may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).  A certificate of appealability may issue under 28 U.S.C. §2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).